(No. 4250-▬▬▬▬▬▬

George Dykhuizen, Claimant, vs. State of Illinois, Respondent.

*Opinion filed December 15, 1950.*

Bull, Yost and Ludens, Attorneys for Claimant.

Ivan A. Elliott, Attorney General; William H. Sumpter, Assistant Attorney General, for Respondent.

SCHUMAN, C. J.

Claimant, George Dykhuizen, was employed by the Division of Highways, State of Illinois, on January 1, 1924. On July 1, 1947 claimant was a maintenance equipment operator, was married, and had one child under 16 years of age. His earnings in the year preceding his injury totaled $2,043.51.

On July 1, 1947, Mr. Dykhuizen was one of a group of men assigned to move a crane trailer to a point on Whiteside County State Aid Road 14, approximately 10 miles west of Morrison. The trailer was attached to a truck. Having arrived at the desired location at approximately 10:00 A.M., Mr. Dykhuizen and his helper proceeded to disengage the trailer from the truck. The assistant, Mr. Jason Bennett, of Morrison, held the trailer tongue, and supported the truck endgate as Mr. Dykhuizen unhooked the trailer. While in this position, the truck moved forward, causing Mr. Bennett to lose his balance and let loose of the endgate, which struck Mr. Dykhuizen on the head as it fell. Mr. Dykhuizen was rendered unconscious by the blow. Mr. Bennett called an ambulance, and Dr. Ward B. Manchester, of Morrison, who sent Mr. Dykhuizen to the Morrison Hospital.

Medical testimony of Dr. Manchester diagnosed a fracture of the 4th thoracic vertebra. Because of lack of improvement, he was sent to Dr. H. B. Thomas, orthopedic surgeon, in Chicago, Illinois. On January 7, 1948 Dr. Thomas made his first examination, and had claimant

hospitalized at St. Luke's. The result of Dr. Thomas' examination disclosed muscle spasm of all neck muscles. Claimant was also examined by Dr. Robert G. McMillan, neurologist, who reported "Neurological examination does not confirm any definite diagnosis." Dr. Wesley A. Gustafson examined claimant, and his impression was that claimant had a mild cervical disc syndrome. Dr. Thomas again saw claimant on March 24, 1948.

Dr. Robert G. McMillan, psychiatrist, examined claimant on January 10, 1948, and reported no unusual findings.

Dr. Thomas examined claimant again on May 18, 1948 and on May 26, 1948 and reported:

"There is a slight depression posterior upper skull mentioned in one of our former letters as an injured area; otherwise the examination is negative. There is a numb feeling felt frequently, particularly when fatigued, in the left outer thigh. He hasn't had any physic for about two weeks. I am recommending dismissal at this time, allowing him to continue with the work he is doing to save himself, until the effects of the concussion as illustrated in the head *dizziness and leg numbness* disappears."

On June 16, 1948, Dr. W. A. Gustafson, Assistant Professor of Neurological Surgery, Illinois University, examined claimant, and reported:

"Neurological examination revealed pain upon compression of the head, pain paravertebrally upon percussion, and pain on rotation of the head. No other abnormality was found. Lumbar puncture was done, and this revealed clear, colorless fluid, total protein of 38 millimeters per cent, and a normal colloidal gold curve.

It was my impression that he was suffering from a mild cervical disc syndrome and my recommendations were cervical traction to be followed by cervical collar. He was treated symptomatically at St. Luke's Hospital and later discharged."

Dr. Thomas on December 2, 1948 wrote the following report:

"I spent a good deal of time with Mr. George Dykhuizen on November 23.

"He had a very bad concussion about July 1, 1947. He has done wonderfully in recovering. All his symptoms, which are principally headache,

dizziness, and pain down the left thigh, are due to his concussion, and are exaggerated. Evidently he overworks. I believe he will continue to improve, provided he is able to work cautiously and not exert himself to the point where he knows he is irritating the brain condition, which continues to exist, even one and one-half years after the trauma; and the best medicine for him is what he can do for himself.

"My suggestion for him is to work, but when he begins to feel the least bit tired he should go home and rest."

and, again on February 8, 1949, Dr. Thomas submitted the following report:

"I examined Mr. George Dykhuizen this morning. Findings are absent. He complains of pain in head and nervousness at intervals; I think he is truthful. He states he is better than a year ago.

"I believe he will improve as time goes on. He is doing light work. I am dismissing him with 15 per cent temporary disability. In my opinion there will be no permanent disability."

Because of his injury of July 1, 1947, Mr. Dykhuizen was totally disabled July 2 to 21, 1947, and December 20, 1947 to March 14, 1948, all dates inclusive. He was paid full salary in lieu of compensation July 2 to 15, 1947 in the amount of $84.46; December 20, 1947 to January 7, 1948 in the amount of $74.62; and compensation at the rate of $19.50 a week from July 16 to July 21, 1947, inclusive, in the amount of $16.71; and January 8 to March 14, 1948, inclusive, in the amount of $186.65, or a total of $203.36. The periods of total temporary disability equaled 15 1/7 weeks, and combined payments for total temporary disability equaled $362.44.

In addition to the payments for lost time mentioned in the preceding paragraph, Mr. Dykhuizen was paid full salary for the days he was unable to work because of trips to Chicago for treatment after March 14, 1948. These trips occurred on the following dates: March 24, 1948, May 18, 1948, May 26, 1948, November 23, 1948 and February 8, 1949. Payments for lost time resulting from these trips totaled $33.24.

All medical bills and hospital bills were paid by

respondent including claimant's expenses to Chicago.

No jurisdictional questions are presented.

Claimant alleges a permanent partial disability, and claims a loss of earning capacity. In order for claimant to sustain a claim for permanent partial disability it is essential to prove an actual disability, and in the event of such disability he must show the differential between what he earned before the accident, and what he is earning or able to earn in some suitable employment after the accident.

Dr. Thomas in his final report stated that in his opinion there will be no permanent disability.

Dr. Manchester thought his condition was largely one of a neurotic, and estimated the claimant had at least a 25 per cent disability. Dr. Manchester thought claimant sustained a fracture of the fourth thoracic vertebra.

The Court concludes from the evidence that no case of a permanent partial disability has been sustained. However, from the evidence, and the testimony as to the fracture of the vertebra, the claimant has sustained a loss of function in the back, and under Section 8 (d) of the Act is entitled to compensation for 30 weeks.

Stenographic services were rendered by William J. Cleary & Co. in the amount of $84.40, which the Court finds to be reasonable.

An award is entered in favor of claimant for loss of function of back for 30 weeks at the rate of $19.50, or a total of $585.00, less overpayment of $67.15 for nonproductive time, or a net award of $517.85, all of which has accrued and is payable forthwith.

An award is entered in favor of William J. Cleary & Co. for stenographic services in the amount of $84.40, which is payable forthwith.

This award is subject to the approval of the Governor, as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."